**Neal H. GIFFIN and Dorothy L. Giffin**

v.

**John B. ENSIGN, George F. Burnett Company, Inc., The Timken Detroit Axle Company, and the Studebaker Corporation,**

**John B. Ensign and George F. Burnett Company, Inc., Appellants.**

**No. 11665.**

United States Court of Appeals Third Circuit.

Argued Nov. 17, 1955.

Decided June 8, 1956.

John H. Bream, Harrisburg, Pa. (Michael T. Morris, Harrisburg, Pa., on the brief), for appellants.

F. Brewster Wickersham, Harrisburg, Pa. (Metzger, Wickersham & Knauss, Edward E. Knauss, III, Harrisburg, Pa., Heffner & DeForrest, M. B. DeForrest, Huntingdon, Pa., on the brief), for Giffin et al.

James K. Thomas, Harrisburg, Pa. (Arthur H. Hull, Hull, Leiby & Metzger, Harrisburg, Pa., on the brief), for Studebaker Corp.

Earl V. Compton, Harrisburg, Pa. (Compton, Handler & Berman, Harrisburg, Pa., on the brief), for Timken-Detroit Axle Co.

Before BIGGS, Chief Judge, and KALODNER and HASTIE, Circuit Judges.

BIGGS, Chief Judge.

This appeal is concerned with a negligence action arising out of a collision in Pennsylvania between an automobile belonging to the plaintiffs, the Giffins, and a truck owned by the defendant, George F. Burnett Company, Inc., and driven by the defendant Ensign in the course of his employment by Burnett. The complaint charges negligence in the operation of the Burnett truck on the part of Ensign and negligence on the part of the defendant, Timken Detroit Axle Company,[1] in manufacturing the front axle of the truck and negligence on the part of the defendant, Studebaker Corporation, in assembling the left front axle assembly of the vehicle.

The jurisdiction of the district court is based on diversity of citizenship. The plaintiffs are citizens of Pennsylvania while the defendants are an Indiana resident and the three foreign corporations, Burnett, Studebaker and Timken. The summons and complaint were served on all of the defendants by sending copies by registered mail, return receipt requested, to the Secretary of the Commonwealth of Pennsylvania and to the defendants at their last known addresses with endorsements showing that service had been made on the Secretary. Neither Timken nor Studebaker objected to service in this manner. The defendants Ensign and Burnett, however, did object to the mode of service, basing their position on the provisions of Fed.Rules Civ.Proc. rule 4(f), 28 U.S.C.A. The trial court overruled this objection, D.C.M.D.Pa. 1953, 15 F.R.D. 200, and the case proceeded to trial. The jury found in favor of the plaintiffs against Ensign and Burnett but absolved Timken and Studebaker from liability. After the denial of a motion for a new trial, Ensign and Burnett brought this appeal.

Before turning to the many objections raised to the conduct of the trial, we must determine whether the defendants Ensign and Burnett were properly before the district court. The method of service above was in accord with the Pennsylvania non-resident motorist statute. See 75 P.S.Pa. § 1201, as affected by 17 P.S.Pa. § 61, and Pa.R.C.P. Nos. 2079 and 2100, 12 P.S.Pa.Appendix. F.R.C.P. 4(d) (7) authorizes service in the manner prescribed by State law. However, Ensign and Burnett argue that

1. Rockwell Spring and Axle Company is a successor corporation to Timken. Rockwell is a Pennsylvania corporation, but Timken was a foreign corporation at the time service was made upon it. Therefore the District Court retained jurisdiction over the suit. See Louisville, N. A. & C. Ry. Co. v. Louisville Trust Co., 1899, 174 U.S. 552, 19 S.Ct. 817, 43 L. Ed. 1081 and Goltzman v. Rougeot, D.C. D.La.1954, 122 F.Supp. 700.

Rule 4(d) (7) is in turn limited by Rule 4(f), which restricts the service of process to the territorial limits of the State in which the district court sits. In support of their position they cite language in the concurring opinion of Judge Maris in McCoy v. Siler, 3 Cir., 1953, 205 F.2d 498, 501.

■■ The problem comes before us in the appeal at bar only as a question in the application of the Federal Rules of Civil Procedure relating to summons by substituted service. Though there are far reaching undertones in the principle enunciated by the concurring opinion in McCoy v. Siler it is not necessary to deal with them here.[2] There is no dispute that Rule 4(d) (7), F.R.C.P., if read alone, authorizes the procedure fol-

lowed in the case at bar to bring the non-resident defendants before the court and to subject them to its jurisdiction. The only question is whether a reasonable man must construe Rule 4(f) as so limiting Rule 4(d) (7) that it cannot apply to the situation of these non-resident defendants. Judge Maris's position in McCoy v. Siler is carefully reasoned and he insists that Rule 4(f) does limit Rule 4(d) (7) but we are now persuaded that such a limitation was not intended and is not logically inescapable. We think that it can be said fairly that Rule 4(f) does not address itself to or cover non-resident procedures authorized by State law, which are the subject of Rule 4(d) (7). That conclusion, and no more, is needed to decide this case.[3, 4, 5] The service was lawful.

2. See, for example, Travelers Health Ass'n v. Com. of Virginia, ex rel. State Corp. Comm., 1950, 339 U.S. 643, 70 S. Ct. 927, 930, 94 L.Ed. 1154, where "service of process" by registered mail outside of the State in which the suit was brought was held to meet constitutional requirements a distinct recognition by the Supreme Court of the evolution of legal thinking in this field. In view of Travelers Health Ass'n it is clear, despite narrow conceptions, stated in the earlier cases, that there are situations in which State process may effectively go beyond State boundaries subjecting non-residents to the judicial power of local tribunals. Issues in this difficult field must be left open, insofar as is possible, for future determination.

3. We are informed that there is presently pending in the Court of Common Pleas, Huntingdon County, Pennsylvania, another suit by the same plaintiffs against the same defendants as are named in the suit at bar (No. 48 September Term, 1953). If the suit at bar were dismissed the Huntingdon County suit could be removed to the United States District Court, thus probably bringing before the court below the same issues on the merits which presently confront us. To dismiss the instant case and require a new trial would bring little credit on the speed and efficiency of judicial proceedings.

4. Rule 4(f), 28 U.S.C., provides: "Territorial Limits of Effective Service. All process other than a subpoena may be served anywhere within the territorial

limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. A subpoena may be served within the territorial limits provided in Rule 45."

The difference between a "summons" and a "subpoena" is too well known to require discussion.

In 1938, when Rule 4(f) was enacted, the Advisory Committee to the Supreme Court, which formulated it, made the following comment: "Note to Subdivision (f). This rule enlarges to some extent the present rule as to where service may be made. It does not, however, enlarge the jurisdiction of the district courts."

In respect to Rule 4(d) (7), Chief Judge (then Dean) Charles E. Clark, a member of the Committee, stated: "* * * and (7) is a kind of catchall, providing that in classes (1) and (3) above,—that is, those dealing with the individual or the corporation or association—any form of service which would be good in the State where the district court is sitting shall also be held good in the federal court." Federal Rules of Civil Procedure and Proceedings of the American Bar Association Institute, Cleveland, 1938, p. 205.

See also 2 Moore's Federal Practice ¶ 4.19 at p. 949 (2d ed. 1948), in which it is said that Rule 4(f) "evidently refers to ordinary original service, and was not intended to restrict the effectiveness of

5. See page 313.

As to the conduct of the trial, the appellants raise thirteen objections. In reviewing these, we are bound by Rule 61, F.R.C.P., which provides that a verdict shall not be set aside for errors in the conduct of the trial "unless refusal to take such action appears to the court inconsistent with substantial justice." We have read the record of this lengthy trial and given careful consideration to these objections. We shall consider them seriatim.

■ Initially, the appellants contend that the court prematurely placed upon them the burden of proving affirmatively that the defendants Timken and Studebaker were guilty of negligence which was the proximate cause of the accident. It became apparent at the pre-trial conference that, although the plaintiffs had named four defendants in the complaint, when the case came to trial they might not rely too strongly on that portion of their case dealing with Timken and Studebaker. Thus the defendants-appellants, Ensign and Burnett, were put in the position of being forced to try to shift the blame from themselves to the defendants Timken and Studebaker, or either of them, if the plaintiffs made out a good case. Before the jury was sworn, the matter was taken up again by counsel for Timken who stated that at pretrial the defendants Ensign and Burnett contended that the nuts fastening the spindle on the knuckle casting on the left front wheel of the truck were not properly tightened, were either too loose or too tight. Counsel for Timken insisted that it should appear on the record just what was the position of counsel for Ensign and Burnett in respect to this allegation of negligence on the part of Timken. The court ruled that the substance

---

state substituted service when federal process is served in that manner." See also Note 70 to Rule 4 in Barron & Holtzoff, Federal Practice and Procedure, Rules Ed. Vol. 1, p. 303.

In 1938 there were at least forty State statutes affecting non-resident motorists; and it seems almost inescapable that if Rule 4(f) was intended to override Rule 4(d) (7), some discussion would have been had on such an important change.

It should be noted also that the proposed amendments to the Federal Rules of Civil Procedure and the comments of the Advisory Committee support our conclusion that the district court in the case at bar obtained jurisdiction over the objecting defendants.

The Advisory Committee proposed that Rule 4(e) be amended to read as follows: "Whenever a statute of the United States *or any of these rules* or an order of court provides for service of a summons, or of a notice, or of an order in lieu of summons upon a party not an inhabitant of or found within the state, service shall be made under the circumstances and in the manner prescribed by the statute, rule, or order. *Whenever a statute or rule of court of the state in which the district court is held provides for notice to such a party to appear and respond or to defend in an action by reason of the attachment or garnishment of his property located within the state, or for service of a summons, notice, or order in lieu of summons upon* *a party not an inhabitant of or found within the state, it shall also be sufficient if service is made or the party is brought before the court under the circumstances and in the manner prescribed in the state statute or rule.*" (Proposed amendment in italics.)

The Committee commented: "[The question] may arise also as to service upon a nonresident motorist through the now popular device, adopted in all of the states, of service upon a state official, made defendant's agent by statutory force upon defendant's use of the highways, together with some form of notice to the defendant. The Supreme Court has resolved disagreement among the lower federal courts by holding that there is no waiver of federal venue requirements by the statutory appointment of a state official as the agent for a nonresident motorist, and thus that this device may not be used to bring suit in the district where the accident occurred if neither all the plaintiffs nor all the defendants are residents thereof. Olberding v. Illinois Cent. R. Co., 1953, 346 U.S. 338, 74 S.Ct. 83, 98 L.Ed. 39. But the Court has expressed no opinion on the view urged in the concurring opinion to McCoy v. Siler, 3 Cir., 1953, 205 F.2d 498, 501–502, certiorari denied 1953, 346 U.S. 872, 74 S.Ct. 120, 98 L. Ed. 380, that service on the state official as a means of bringing the nonresident motorist into court is also barred because Rule 4(f), prescribing the territorial lim-

of the defense should be disclosed. This was a proper ruling. A law suit today is not a game of chance.

The conference on this question was had at sidebar and we fail to see how the position of Ensign and Burnett could possibly have been prejudiced by the court's ruling. As a matter of fact, the issue could not and did not become pertinent until the completion of the plaintiffs' case when Ensign and Burnett put in their case in the normal fashion.

■ The appellants also charge error in the fact that they were not permitted rebuttal at the closing arguments. But this argument is unimpressive. The decisions which the appellants cite do not present situations comparable to the case at bar. Indeed, the decision on which

they rely most heavily, Silver v. New York Life Ins. Co., 1940, 116 F.2d 59, is against them. At page 62 of that opinion the Court of Appeals for the Seventh Circuit quotes with approval from Lancaster v. Collins, 1885, 115 U.S. 222, 225, 6 S.Ct. 33, 29 L.Ed. 373: "'It is also assigned for error that the court refused to permit the counsel for the plaintiff to make the closing argument to the jury, the contention on the part of the plaintiff being that the affirmative was with him. But this is purely a question of practice, to be reviewed only by a motion for a new trial in the trial court, and, is not the proper subject of a bill of exceptions or of a writ of error, because it does not affect the merits of the controversy.'" Under the circumstances at bar we cannot agree that the denial of

its of service, restricts Rule 4(d) (7), authorizing service in the manner prescribed by state law, and thus makes ineffective the notice which due process requires be given to the nonresident under Wuchter v. Pizzutti, 1928, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230. Such a construction of the Rules would prevent use of this convenient means for suing at the place where the accident occurred even where all the plaintiffs reside in that district, and the venue is, therefore, proper. This construction was not followed in Giffin v. Ensign, D. C.M.D.Pa.1953, 15 F.R.D. 200, where it was held that Rule 4(f) is to be construed as in 'assistance' of, rather than as a limitation upon Rule 4(d) (7), or in Pasternack v. Dalo, D.C.W.D.Pa.1955, 17 F.R.D. 420, or Holbrook v. Cafiero, D.C. D.Md.1955, 18 F.R.D. 218. See 2 Moore's Federal Practice ¶¶ 4.18, 4.19 (2d ed. 1948).

"The Rules do not control or affect questions of venue. Rule 82. They can and properly should control service of process, and the means by which defendants may be 'brought into court,' where requirements of subject-matter jurisdiction and venue are met. Mississippi Pub. Corp. v. Murphree, 1946, 326 U.S. 438, 66 S.Ct. 242, 90 L.Ed. 185. This amendment will remove doubt and allay confusion to permit suits in the diversity jurisdiction of the court equally in original as in removed actions and in conformity with state practice and available local remedies."

The Committee also proposed that Rule 4(f) be amended to read as follows:

"All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States *or these rules* so provides, beyond the territorial limits of that state * * *."

The Committee commented: "The additional words in the first sentence of the subdivision make clear that Rule 4(f) does not limit Rule 4(e). See the note to Rule 4(e)."

5. Holbrook v. Cafiero, D.C.D.Md.1955, 18 F.R.D. 218; Pasternack v. Dalo, D.C. W.D.Pa.1955, 17 F R.D. 420; Andrus v. Younger Bros., D.C.W.D.La.1943, 49 F. Supp. 499; Sussan v. Strasser, D.C.E.D. Pa.1941, 36 F.Supp. 266; Williams v. James, D.C.W.D.La.1940, 34 F.Supp. 61.

See also the following cases in which the same conclusion was reached, without, however, any discussion of Rule 4 (f): Mendenhall v. Texas Co., D.C.W.D. Pa.1953, 15 F.R.D. 193; Kirksey v. v. Beauchesne, D.C.D.Mass.1951, 98 F. Supp. 148; Morris v. Sun Oil Co., D.C.D. Md.1950, 88 F.Supp. 529; Magelssen v. Hale, D.C.W.D.Mo.1948, 81 F.Supp. 138.

No reported case has been cited to us, and we can find none which supports the defendants' point of view. Cf. Szubo v. Keeshin Motor Express Co., D.C.N.D. Ohio 1949, 9 F.R.D. 492 and Niemiec v. Interstate Motor Freight System, D.C. W.D.Mich.1952, 2 F.R.D. 408.

As to service upon the proper State officer constituting personal service, see Scorza v. Deatherage, 8 Cir., 1954, 208 F.2d 660.

rebuttal argument to the appellants was an abuse of discretion by the trial court. Certainly that denial under the circumstances was not an action "inconsistent with substantial justice" within the purview of Rule 61.

■ Next the appellants argue that the verdict is against the uncontrovertible physical facts of this case. On reading the record, we consider this contention insubstantial. There is ample evidence to support the verdicts, and what the appellants urge as uncontrovertible physical facts are not uncontroverted, even by the testimony of their own expert witnesses.[6]

■ The appellants also contend that the proffered testimony of a State police officer who investigated the accident with regard to the point of impact on the vehicles in the collision was improperly excluded. But since the officer did not see the accident, the exact place of impact was clearly a matter of opinion and further one on which the jury was capable of drawing its own conclusions. Cf. Della Porta v. Pennsylvania R. Co., 1952, 370 Pa. 593, 598–599, 88 A.2d 911, 913.[7]

■ The appellants also submit that there was "no competent testimony of speed even though [the plaintiffs'] entire case [was] based on speed." But the plaintiffs' case was not based on speed alone. The appellants ignore the admitted fact that the Burnett truck was on the wrong side of the road. Such evidence of negligence is of itself sufficient to make out a *prima facie* case against the appellants. See Fisher v. Hill, 1949, 362 Pa. 286, 289–290, 66 A.2d 275, 277. The burden was then on the appellants to explain away the inference

of negligence. This, they attempted to do by the contention that the left front wheel came off the truck, causing it to veer over onto the left side of the road. The jury rejected this theory as it had the right to do. But quite apart from the foregoing, Miller's and Molek's testimony as to speed was competent. With regard to Miller's testimony, Ealy v. New York Central R. Co., 1939, 333 Pa. 471, 5 A.2d 110, is the only decision cited by the appellants which excluded pertinent testimony as to speed. In that case not only was the witness's observation limited to a distance of *25* feet during which he observed the train bearing down upon the car in which he was riding, but the issue of speed was irrelevant because the train was traveling in a rural area where it was not subject to any speed limit. The other cases cited merely note that testimony as to speed based on momentary observation is entitled to little weight and *standing alone* will not support a finding of negligence. Moreover, there is ample other evidence to support the verdict. Cf. Shaffer v. Torrens, 1948, 359 Pa. 187, 193–194, 58 A.2d 439, 442. Molek's testimony was considerably stronger than Miller's. The facts that his speedometer was broken and that he did not in this case use mileposts and a watch do not discredit his testimony based on over a million miles of driving experience.

Next, the appellants try to discredit the testimony of both witnesses because Molek stated that brakes were applied on the Burnett truck, whereas Miller did not recall whether the brakes were or were not applied. It should be pointed out that Molek was behind the Burnett truck and thus would have his attention drawn to any braking by the braking

---

6. See, for example, the cross-examination of H. M. Jacklin, Record, pp. 581–655, 679–685 passim. Compare Lavender v. Kurn, 1946, 327 U.S. 645, 652–653, 66 S.Ct. 740, 90 L.Ed. 916. See also Dostal v. Baltimore & O. R. Co., 3 Cir., 1951, 189 F.2d 352; Cranston v. Baltimore & O. R. Co., 3 Cir., 1940, 109 F.2d 630.

7. The three cases cited by appellants, Nicholson v. Feagley, 1940, 339 Pa. 313,

14 A.2d 122; Ruther v. Tyra, 1952, 207 Okl. 112, 247 P.2d 964; Staples v. Spence, 1942, 179 Va. 359, 19 S.E.2d 69, do not support their position. One of them does not concern opinion evidence; the other two involve testimony with regard to skid marks, a situation where the expertness of a police officer would enable him to provide information generally unknown to laymen.

lights, whereas Miller was traveling towards the truck. Assuming a conflict in the testimony of Molek and Miller, that conflict is readily explainable in view of the limited period of time which Miller had for observation.

The appellants complain of the exclusion of the proffered testimony of their witness Mullin, who was driving another of their trucks ahead of Ensign. Where a preceding vehicle actually limits the speed of another vehicle following close behind, testimony as to the speed of the former is admissible to show the speed of the latter. Mullin testified that he had not observed Ensign in his rear view mirror for the half-mile prior to the accident.[8] Thus the necessary foundation for introduction of this evidence was lacking, and the testimony as to Mullin's speed properly was excluded. The appellants also assert that Mullin was not permitted to testify as to statements allegedly made to him by the plaintiffs' witnesses Molek and Miller immediately after the accident. Apart from the appellants' failure to prove an involvement, psychological or factual, in the accident which would sustain the admissibility of the statements as part of the *res gestae*, the appellants defeated any possibility of that rule's application when they admitted that the statements were not spontaneous exclamations but were solicited by Mullin for his company accident report. Cf. Allen v. Mack, 1942, 345 Pa. 407, 410, 28 A.2d 783, 784–785.

The statements referred to were pure hearsay. They could have been admissible for the purposes of impeachment had the appellants laid the necessary groundwork by confronting Molek and Miller with the contents of the statements when Molek and Miller were on the witness stand. Lacking such a foundation, the trial court properly excluded the allegedly contradictory statements. See Giles v. Valentic, 1946, 355 Pa. 108, 110, 49 A.2d 384, 385.

The appellants argue that certain photographs of the Burnett truck taken at a garage by their witness Crist on the day following the accident were excluded improperly. The record contains no testimony or offer of testimony that the condition of the truck was substantially the same as it was immediately following the accident. In fact, the only testimony as to these photographs was by Crist, who did not see the truck until the morning on which he took the photographs. The trial judge's ruling in excluding the photographs was correct. See Taylor v. Modena Borough, 1952, 370 Pa. 100, 101–102, 87 A.2d 195, 196.

The appellants also assert that they were prejudiced by the exclusion of important expert testimony. A reading of the record at the points cited by the appellants' brief indicates that the trial judge properly excluded such evidence because the proper factual foundations for the witnesses' opinions had not been laid. See Peters v. Mutual Life Ins. Co. of New York, 3 Cir., 1939, 107 F.2d 9, 12. Kanatser v. Chrysler Corp., 10 Cir., 1952, 199 F.2d 610, certiorari denied 1953, 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710, cited by the appellants, did not consider this problem. Moreover, when the appellants elicited the necessary grounds for an expert opinion, the appellants' witness Jacklin was permitted to testify repeatedly to his views.[9] Finally on this issue, a trial judge may without error exclude expert testimony which is merely repetitive and cumulative as here. See Kanatser v. Chrysler Corp., supra, 199 F.2d at page 619.

The appellants further charge error in the trial court's refusal to permit their witness Jacklin to define his use of the word "immaterial." We fail to perceive why a definition is needed of this ordinary word used in its usual sense or how the appellants could conceivably have been prejudiced by the absence of a definition. The members of a jury possess knowledge of English; and the word "immaterial" is scarcely a word

---

8. See record, p. 228.

29. See record at pp. 566, 577, 703.

of art, even at law. A trial is not an exercise in semantics.

■ The appellants next complain that the trial court refused to permit their witness Wheeler to demonstrate with an axle assembly "how the principle of clearance operated in the wheel of the Ensign truck between the back plate and brake drum so that there was not sufficient space to permit the nuts to escape the knuckle housing." The quoted language appears in appellants' brief, but no indication of its purpose appears in the transcript of the trial. Moreover, the appellants failed to show that the axle assembly to be used for the demonstration, which was not a Timken assembly, had the same spacing as the Timken assembly in the Burnett truck. The demonstration was therefore incompetent and properly disallowed.

■ The appellants charge error in that "improper remarks of [opposing] counsel [during the course of the trial and in their opening and closing statements to the jury were] condoned by the [trial] court." As for the remarks during the course of the trial, the appellants complain that counsel for Timken accused their counsel of twisting the evidence. These instances were comparatively rare when we consider the fact that this trial was hotly contested and lasted for eleven days. The accusation that the court below condoned these remarks is baseless. Very occasionally the trial judge's recollection of what had been said was incorrect, a by no means unusual occurrence in a trial of this length. However, his misimpressions were immediately corrected by references to the record. In any event, this challenge, raised for the first time on the motion for a new trial, came too late. Cf. Chicago & N. W. Ry. Co. v. Green, 8 Cir., 1947, 164 F.2d 55, 64.

The opening statements of counsel to the jury are not in the record. As to the arguments to the jury at the close of the

case, counsel for the appellants said that he was satisfied "that they be not reported" and in accordance with that view the court stated that it "is agreed all the way through that the addresses will not be reported." Some months after the verdicts had been rendered a motion was filed for "diminution" of the record by Timken (Rockwell Spring & Axle Company) and a few days later a similar motion was filed by Ensign and Burnett. Timken filed an answer to the motion of Ensign and Burnett. Both motions and the answer asserted versions as to what opposing counsel had stated to the jury in their closing arguments. A date was set for hearing and on that date Timken withdrew its motion. Following the hearing the court below entered an order denying the motion of Ensign and Burnett for diminution of the record. Insofar as the instant record shows, the court below did not state its reasons for the denial of the remaining motion.

■ We will assume that the parties were making an attempt to proceed as prescribed by Rule 75(h), F.R.C.P., and we omit comment, because unnecessary, on the fact that the parties sought to correct or supplement material which by express agreement was not included in the record and therefore can scarcely be described accurately as part of it. Insofar as correction or modification of a record in the district court is concerned, Rule 75(h) provides that if counsel cannot settle their difference as to what was said, the "difference" shall be submitted to and settled by the court and the record made to conform to the truth. Obviously the trial court denied the motion of Ensign and Burnett either because the motion was without merit or because the trial judge (as counsel suggests) could not remember what was said by counsel to the jury after such a lapse of time. In any event we cannot pass on the allegedly improper arguments which are not before us in any definitive state.[10]  See Illinois Terminal R. Co. v.

10. The appellants' position is not in the least improved by their contention that counsel for Timken in arguing to the jury

"used practically verbatim" certain arguments which he had used at sidebar. In order that an appellate tribunal can pass

Friedman, 8 Cir., 1954, 210 F.2d 229, 231.

Finally, the appellants argue that the amounts of the verdicts were excessive. The jury awarded to Giffin $15,000 and to Mrs. Giffin $60,000. The trial judge was not dissatisfied with the amounts. In view of the very serious injuries sustained by Mrs. Giffin, if we were to substitute our own judgment for that of the jury, we would deem the amount of $60,000 not too liberal. Giffin suffered the loss of his wife's services and consortium. He also incurred substantial medical bills. The amounts of the verdicts clearly are such as not to be outrageous. See Johnson v. Baltimore & O. R. Co., 3 Cir., 1953, 208 F.2d 633, and Zarek v. Fredericks, 3 Cir., 1943, 138 F. 2d 689.

The judgments will be affirmed.

on the propriety of what was argued to the jury, it must have before it an accurate transcript of what was said or on its own initiative require correction of a misstatement or omission and if necessary require a supplemental record to be transmitted. It is obvious in this case that any action taken by this court would be futile.