The METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, a municipal corporation, Plaintiff,

v.

GENERAL ELECTRIC COMPANY et al., Defendants.

No. 61 C 2192.

United States District Court
N. D. Illinois, E. D.
July 19, 1962.

Charles A. Bane, Robert W. Bergstrom, Seymour F. Simon, Thomas C. McConnell, Lee A. Freeman, William J. Froelich, Chicago, Ill., Van B. Wake, Milwaukee, Wis., Daniel P. Ward, State's Attorney of Cook County, Illinois, Barnabas F. Sears, James O. Smith, Chicago, Ill., for plaintiffs.

John T. Chadwell, Hammond E. Chaffetz, Holmes Baldridge, Edward R. Johnston, W. Donald McSweeney, John Paul Stevens, Earl E. Pollock, Robert C. Keck, Roland D. Whitman, Timothy G. Lowry, Harold T. Halfpenny, Lloyd M. McBride, Neil McKay, Jacob H. Martin, Edward R. Adams, Brainerd Chapman, Chicago, Ill., for defendants.

ROBSON, District Judge.

This is a civil antitrust treble damage suit against some seventeen corporations and some twenty-six individuals. Twelve motions seeking to quash service of summons and/or dismiss have been filed, covering most of the individual defendants.[1]

Joint briefs by the moving defendants have been filed, and oral argument had, asserting the bases of the motions to be that (1) the individual defendants were not subject to suit in the Northern District of Illinois, not being citizens or residents of Illinois; (2) they were not served within the territorial limits of Illinois, but were served in the states of the respective individual defendant's residence, and (3) as to four of the defendants a contention is made that the manner of service was improper under Rule 4 of the Federal Rules of Civil Procedure, 28 U.S.C.A. Defendants assert that none of them is "found," "resides," or has an agent in this District as required by Section 4 of the Clayton Act. That statute provides that a suit of this nature may only be brought in the district "in which the defendant resides or is found or has an agent." (15 U.S.C.A. § 15) Defendants further maintain that discovery which plaintiff seeks would, at most, establish agency of the corporate, *not* the individual, defendants.

The complaint alleges at ¶ 1.2 that "All individual defendants are present in the Northern District of Illinois, Eastern Division, by an agent."

Defendants counter that their affidavits prove they do not reside in this District, and have no agent in this State.[2]

Defendants have cited precedent in support of their contention that they are not liable to service on the agency-by-

---

1. Motions in respect to quashing service of summons and dismiss have been filed severally by H. K. Wilcox; C. I. Mauntel; A. M. Tullo; Mark W. Cresap, Jr., J. W. Stirling, James H. Chiles, Jr., Robert N. McCollom, W. C. Rowland, and J. T. Thompson; Ralph J. Cordiner; Arthur F. Vinson; Landon Fuller and A. W. Payne; W. R. Swoish, F. F. Loock, E. R. Jung, and J. M. Cook; W. T. Pyle and T. C. Finnell; W. Maxwell Wood; L. W. Long and David W. Webb; and J. E. Cordell.

2. The affidavit of Cordell discloses he is a resident of Georgia, where he was served by a U. S. Marshal, and he has never done any business as an individual in, nor had an agent in this district.

The affidavit of Pyle states he was served in Pennsylvania, where he has been a resident all his life; that he had no agent in Illinois and never did have such agents; has no property here and never contracted here.

The affidavit of T. C. Finnell discloses his summons was left on his table in Williamsville, New York, after he refused to accept service; he has been a resident of New York since 1931; is not a resident of Illinois, and never was one and has never had an agent here.

Affidavit of W. Maxwell Wood states he was served in Oregon where he has always been a citizen; had never lived in Illinois, nor had an office, agent, business or property here.

Affidavit of L. W. Long recites that he was served in West Allis, Wisconsin, where he has been a resident since January 1, 1957, and has never resided in Illinois nor had an agent here.

Affidavit of David W. Webb was similarly served in West Allis, Wisconsin, where he has been a resident since 1947; he has never resided nor had an agent in Illinois.

Affidavit of W. R. Swoish discloses Pennsylvania citizenship since 1944, where service was had; he has never had

conspiracy theory[3] and differentiate criminal antitrust suits, or Government equity proceedings to restrain violations of the antitrust laws.[4]

This Court very recently concluded that it could not bring itself to " 'accept the suggestion in Giusti v. Pyrotechnic Industries, Inc., et al., 9 Cir.,

residence or agent here, and his employer, McGraw-Edison Company never sold to plaintiff any of the electrical equipment listed in ¶1.7 of the complaint.

Affidavit of F. F. Loock discloses he was served in his office, in Wisconsin, of which state he has been a resident since 1892; and he has never resided in, had an agent in, or place of business in Illinois.

Affidavit of E. R. Jung states he was served in Ohio where he has been a resident since 1947; he has never been a resident of, nor had an agent in, Illinois.

Affidavit of J. M. Cook recites that he was served at his office in Milwaukee, Wisconsin, of which state he has been a resident since 1953; that he had never had a residence or agent here; that his employer Cutler-Hammer never sold to plaintiff in this District any of the equipment described in ¶1.7 of the complaint.

Affidavit of H. K. Wilcox recites that he was served in Greensburg, Pennsylvania, where he has resided for nine years; that he is not a resident of Illinois, nor does he have an agent, place of business, property, or contract here.

Affidavit of A. W. Payne was served at Forest Hills, Pennsylvania, of which state he has been a resident since 1946; and, similarly, has no residence, place of business, agent, or contract here.

Affidavit of Arthur F. Vinson recites he was served in New York City, New York; he has resided for 10 years at Scarsdale, New York; has not resided in Illinois since 1929, and is not found here and has no agent here.

Affidavit of Ralph J. Cordiner states he was served in New York where he has resided for two years, and the 28 years theretofore in Connecticut; he has never resided in Illinois, and has no agent here.

Affidavit of Mark W. Cresap, Jr., discloses he was served while he was out of the Country. His cook so advised the server. He has been a resident of Pennsylvania since 1951; has never been a resident of, or had an office or agent or property here.

Affidavit of J. W. Stirling discloses that his summons was left between the front door and an outside storm door of his home in Pittsburgh, Pennsylvania, of which state he has been a citizen and resident all his life; that he is not a resident of Illinois and has never had agent, office or property here.

Affidavit of John H. Chiles, Jr. discloses that his summons was thrown in the door of his home in Sharon, Pennsylvania, of which state he has been a resident since 1925; he is not a citizen of Illinois, and has no place of business, agent, or contract here.

Affidavit of Robert N. McCollom recites his summons was left at his home in Sharon, Pennsylvania, of which state he has been a resident since 1952; that he has no agent, property or office here.

Affidavit of W. C. Rowland states his summons was left on his porch at Swathmore, Pennsylvania; that he has been a resident of that state since 1934; that he is not a resident of Illinois, and has no agent, property, place of business, or contract here.

Affidavit of J. T. Thompson was served in his home in Pittsburgh, Pennsylvania, of which state he has been a resident since 1934; that he is not a resident of Illinois, and has no agent, office, place of business here and has no property or contract here.

Affidavit of A. M. Tullo was served at his office in Harrison, New Jersey, in which state he has resided since 1954; that he has never been a citizen of, or had an agent, in Illinois.

Affidavit of C. I. Mauntel discloses his process was left on a table in his home in Drexel Hill, Pennsylvania, after his wife refused to take the summons; his office is at Lester, in Pennsylvania, where he has been a resident since 1922; he is not a resident of Illinois, has no office here, nor agent or property.

3. Bankers Life and Casualty Co. v. Holland, Chief Judge et al., 346 U.S. 379, 74 S.Ct. 145, 98 L.Ed. 106 (1953) ; In re Bankers Life & Casualty Co., 199 F.2d 593 (5th Cir. 1952).

4. United States v. Trenton Potteries Company et al., 273 U.S. 392, 402–403, 47 S.Ct. 377, 71 L.Ed. 700 (1927) ; United States v. Socony-Vacuum Oil Co. et al., 310 U.S. 150, 252–253, 60 S.Ct. 811, 84 L.Ed. 1129 (1940) ; 18 U.S.C. § 3237; Georgia v. Pennsylvania Railroad Co. et al., 324 U.S. 439, 467, 65 S.Ct. 716, 89 L.Ed. 1051 (1945) ; Westor Theatres, Inc. et al. v. Warner Bros. Pictures, Inc. et al., 41 F.Supp. 757 (D.C.N.J.1941) ; Hansen Packing Co. v. Armour & Co. et al., 16 F.Supp. 784, 787 (S.D.N.Y.1936).

156 F.2d 351, that because of the presence within the jurisdiction of one co-conspirator all foreign corporations which are alleged to be co-conspirators are amenable to process.'" (Commonwealth Edison Company, et al. v. Federal Pacific Electric Company et al., D.C., 208 F.Supp. 936.) The Court adheres to that conclusion. Mere membership in a civil conspiracy does not *ipso facto* render a member subject to the jurisdiction of the forum of any other member. (Commonwealth Edison Company et al. v. Federal Pacific Electric Company et al., ibid.) In the case of Periodical Distributors, Inc. v. The American News Co., Inc., (D.C.N.Y.1962) C.C.H. 1961 Trade Cases, ¶ 70,011, p. 78,006, the Court said:

> "The mere allegation of a conspiracy or that acts in furtherance of the conspiracy were performed within the district is insufficient to support venue."

Defendants also contend that service of process was insufficient under Rule 4 of the Federal Rules of Civil Procedure, subsection (f) of which provides that

> "All process other than a subpoena may be served anywhere within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state. * * *" (Italics supplied.)

They maintain that this Circuit's Court of Appeals has repeatedly held that absent an enabling statute, extraterritorial service of process is unauthorized (Reiter v. Illinois Nat. Cas. Co., et al., 213 F.2d 946 (7 Cir., 1954), and Blank v. Bitker, 135 F.2d 962 (7 Cir., 1943)), and no such statute exists as to individual defendants in private antitrust cases. Defendants claim that motions to dismiss and quash have been uniformly sustained where service of this nature has been effected. (Orange Theatre Corporation v. Rayherstz Amusement Corporation et al., 139 F.2d 871 (3rd Cir. 1944); Rohlfing v. Cat's Paw Rubber Co., Inc. et al., 99 F.Supp. 886 (D.C.1951); Huntington Imported Cars, Inc. v. Standard-Triumph Motor Company, Inc. et al., 27 F.R.D. 21 (D.C.N.Y.1960); McManus v. Tato, 184 F.Supp. 958 (D.C.N.Y.1959); Elizabeth Hospital, Inc. v. Richardson et al., 167 F.Supp. 155 (D.C.Ark.1958)) (Similarly, see Periodical Distributors, Inc. v. The American News Co., Inc., ¶ 70,011, C.C. H. Trade Cases, 1961, p. 78,006.) In the last cited case extraterritorial service was held invalid, absent the transaction of business or residence in district in which service was had.

Plaintiff asserts the validity of this extraterritorial service under Rule 4(d) (7) authorizing service in the manner prescribed by any United States statute, or

> " * * * the manner prescribed by *the law of the state* in which the service is made for the summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state." (Italics supplied.)

The plaintiff points out that the Illinois Civil Practice Act, Ch. 110, § 17, provides for service on one who

> "through an agent does any of the acts hereinafter enumerated * * * (b) the commission of a tortious act within this State,"

in which event service

> "may be made by personally serving the summons upon the defendant outside this State"

and points out the plaintiff has averred the commission of a tortious act within the state.

In support of the applicability of the Illinois statute, plaintiff maintains that twenty of the individual defendants [5] pled guilty to the criminal charges returned in Pennsylvania. From this fact it argues the guilty pleas constitute

---

5. Stirling, Pyle, Wilcox, Romano, Cordell, Wood, Chiles, McCollom, McMullen, Swoish, Finnell, Loock, Jung, Cook, Long, Nolan, Webb, Fuller, Thompson and Payne. Two pled nolo, and two have not been indicted.

*prima facie* proof here that they, while engaged in the management of the corporate affairs, had "authorized, ordered or done" the acts charged in the indictment, which included participation in a series of price-fixing meetings at local places here in Chicago.

Defendants, however, refute the applicability of the Illinois provision for these reasons: (1) No statute of the United States permits the extraterritorrial service in this case; (2) The state law is applicable only as to manner of service.[6]

Defendants also point out that the service assailed was physically made in states foreign to Illinois, and therefore the Illinois statute was not the "law of the state in which the *service is made*" under Rule 4(d) (7). (Italics supplied.) Defendants also maintain that in all 72 years since the Sherman Act was enacted no court has sustained out-of-state service of summons.

Defendants finally contend that as to Cresap, Stirling, Chiles and Rowland, the manner of service was improper[7] not being in conformity with Rule 4(d) which prescribes that service be

"＊ ＊ ＊ by delivering a copy of the summons and of the complaint to him personally or by leaving copies thereof at his dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

They cite the fact that Cresap's summons was left with his cook who did not reside at his home; Stirling's summons was left between his front and storm doors; Chiles' summons was thrown in the door of his residence, and Rowland's summons was left on his front porch.

▇▇▇ ·The Court is of the opinion that a careful, consistent reading of the two subsections of Rule 4 sustains the individual defendants' interpretation of Congressional intent, i. e., that extraterritorial service is permissible only

"＊ ＊ ＊ within the territorial limits of the state in which the district court is held and, when a statute of the United States so provides, beyond the territorial limits of that state."

That is the *specific* provision of the act in respect to extraterritorial service; it would therefore be controlling if there could be deemed to be an inconsistency with the subsection 4(d) (7), the subsection second preceding it. The Court, however, sees no inconsistency between the two subsections. Subsection 4(d) (7) simply states one way in which service shall be made, i. e., the *manner* of service, not the territorial scope of valid service. As is noted in Rule 82 of the Rules of Civil Procedure:

"These rules shall not be construed to *extend* or limit the jurisdiction of the United States district courts or the venue of actions therein." (Italics supplied.)

Judge Igoe was coping with this problem of construction of Rule 4(d) (7) and 4(f) in Smith et al. v. Alexandrian, et al., D.C., 30 F.R.D. 553, and he granted a motion to quash service of Massachusetts defendants in Massachusetts, in a suit in Illinois by Illinois residents, on a cause arising in Illinois. He said:

"But given the actual language of Rule 4(d) (7), it is difficult to understand how out-of-state service,

---

6. Kleinschmidt v. Kleinschmidt Laboratories, Inc., 14 Fed.Rules Serv. 4f.22, Case 2 (N.D.Ill.); McCoy v. Siler et al., 205 F.2d 498 (3rd Cir. 1953); Federal Rules of Civil Procedure, Proceedings of Institutes, Washington and New York, 114 (1938); O'Brien et al. v. Richtarsic, 2 F.R.D. 42 (D.C.N.Y.1941); Thompson v. Temple Cotton Oil Co., Inc. et al., 2 F.

R.D. 373 (D.C.Ark.1942); Szabo v. Keeshin Motor Express Co., Inc. et al., 9 F.R.D. 492 (D.C.Ohio, 1949).

7. Zuckerman v. McCulley, 7 F.R.D. 739 (D.C.Mo.1947); U. S. v. Mollenhauer Laboratories, Inc., 267 F.2d 260 (7th Cir. 1959); Frasca, et al. v. Eubank, 24 F.R. D. 268 (D.C.Pa.1959).·

which is expressly made ineffective by Rule 4(f), can be validated by a state statute. If Rule 4(d) (7) comes into play at all, it would refer the District Court to the law of the state in which service is made, in this instance the law of Massachusetts. * * * In the scheme of Rule 4, there appears to be a clear distinction between the question of *where* service may be made and the question of how it can be made. Rule 4(f) deals with the former problem; Rule 4(d) concerns itself with the latter. An examination of the whole of Rule 4(d) shows that it is concerned with the 'manner' of effecting service, in other words with the modes, or mechanics, or formalities which must be followed in order effectively to accomplish service upon the defendant. * * * [T]he Rule, in subparagraph (7), indicates that service is *also* sufficient if 'served in the manner prescribed by any statute of the United States *or* in the manner prescribed by the law of the state in which the service is made * * *.' "

Judge Perry has held similarly in Rappaport v. International Association of Machinists, etc. et al., 202 F.Supp. 235 (1962). Judge LaBuy so held in Rohl-

fing, et al. v. Cat's Paw Rubber Co., Inc. et al., 99 F.Supp. 886 (D.C.Ill.1951). Similarly, McManus v. Tato, 184 F.Supp. 958 (D.C.N.Y.1959).

The case of Goldlawr, Incorporated v. Shubert et al., 169 F.Supp. 677 [8] (D.C. Pa.1958), involved a dismissal as to some nonresident individual defendants and a retention of others, the latter action being predicated on the existence of evidence to prove presence of an agent of said nonresident defendants in the state in which the suit was brought in the United States District Court. The Court reviewed the several facts indicative of agency by the resident, of the nonresident, defendants and their control over the resident.

The Court concludes that the issue upon these motions is therefore narrowed to a determination of whether the moving individual defendants who were served extraterritorially, had *agents* within this District, within the meaning of Section 4 of the Clayton Act. (15 U.S. C.A. § 15)

The moving defendants point out that there has been no controverting by the plaintiff of defendants' supporting affidavits denying residence in Illinois, the existence of any agent here, and establishing the fact that they have no places of business here, have transacted no

8. The decision in this same cause, dismissing after transfer under 28 U.S.C. § 1406(a), appears at 175 F.Supp. 793 (D. C.N.Y.1959), which was affirmed in 288 F.2d 579 (2nd Cir. 1961), which in turn was reversed by the United States Supreme Court, April 30, 1962, in Goldlawr, Inc. v. Heiman, et al., 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39. In the Goldlawr case, supra, it was said at p. 681 of 169 F.Supp.:

"Plaintiff does not contest the averments in the remaining individual defendants' affidavits that each resided in New York and, since none of them was *found* here, we must determine whether any of them had *an agent* here. [Court italics.]

"Prior to 1914, venue in antitrust actions was laid in the district in which the defendant resided or was found. The addition of the district in which defendant 'has an agent' was a change made by the Clayton Act, which also enlarged prior venue provisions as to corporations by adding thereto the district in which a corporation transacts business. * * *

"We believe 'or has an agent' broadened the concept of 'found' in the case of individual defendants, just as 'transacts business' broadened the concept of 'found' in the case of corporate defendants * * *. The purpose of these two changes was to ' * * * give the plaintiff the right to bring suit and have it tried in the district where the defendant had committed violations of the Act and inflicted the forbidden injuries.' * * *

" 'Thus *strict* uniformity in the two sections' venue provisions was not achieved. But whatever their differences may be, *each addition was designed to aid plaintiffs by giving them a wider choice of venues, and thereby to secure a more effective, because more convenient, enforcement of antitrust prohibitions.*' [Court deciding cause states: Emphasis supplied.]

business in Illinois, and entered into no contracts here nor are there contracts to be performed here. Plaintiff on the other hand argues that these affidavits were not sufficient, even although unopposed by plaintiff, to establish lack of agency here.

Plaintiff stresses the need of discovery to prove its assertion that the individual defendants did in fact have such agents within this jurisdiction, which fact, if established, would support the venue. On the other hand, defendants maintain this discovery must be unavailing in that as a matter of law there could be no agency between the co-employees *inter se,* in that necessarily each is representing only his employer, and to hold nonresident corporate officials bound by their co-employees' actions would be grossly enlarging the jurisdictional scope of the antitrust acts far beyond the intent of Congress.

"Ordinarily, agency is a question of fact" [9] and the possibility that there can be an agency outside the corporate co-employment, is indicated.[10]

■ It has been held that there is no statutory direction as to the procedure to be followed in determining whether the prerequisites to jurisdiction exist. The manner in which such a determination should be made is left to the trial court. The issue may be determined upon affidavits, or the court may determine the issue by oral testimony and other evidence. (Kantor v. Comet Press Books Corp., 187 F.Supp. 321 (D.C.N.Y. 1960)) In Green v. Oster, 20 F.R.D. 198, it was held at p. 199 that:

"The propriety of allowing discovery upon a motion to dismiss on any of the grounds specified in (1) to (5) in Rule 12(b) is well established. [Citing many cases.]

"The defendant may not be heard that his testimony should be withheld on the very issue he himself has raised, particularly when it relates to his own acts, conduct, intentions and state of mind.

"Accordingly defendant's motion to vacate the notice of taking his deposition is denied. The motion to dismiss for improper venue is denied without prejudice to renew after completion of plaintiff's pre-trial discovery proceedings."

In Abrams et al. v. Bendix Home Appliances, Inc., 92 F.Supp. 633, at p. 634 (D.C.N.Y.1950), the Court stated:

"The moving affidavits cast doubt upon the propriety of the venue. Plaintiffs have asked that they be permitted to examine defendant on that question, and *they are entitled to do so.*

"Consequently, the motion to dismiss for improper venue will be denied, without prejudice to a renewal after plaintiffs have completed the taking of such depositions as they deem necessary to meet the issue, or in the event of their failure to proceed diligently with the taking thereof." (Italics supplied.)

A motion to dismiss was denied with leave to renew after the taking of depositions in Anderson-Friberg, Inc. et al. v. Justin R. Clary & Son, Inc. et al., 98 F.Supp. 75 (D.C.N.Y.1951).

■ The Court therefore accedes to plaintiff's request for discovery by dep-

---

9. 3 C.J.S. Agency, § 330, p. 323; Riverside Fibre & Paper Co. v. O. C. Keckley Co., 32 F.2d 23 (7th Cir. 1929); Seaboard Properties, Inc. v. Bunchman, 278 F.2d 679 (5th Cir. 1960); Mitchell v. Union Pacific Railroad Co., 242 F.2d 598 (9th Cir. 1957).

10. Fletcher Cyclopedia Corporations (Perm. Ed.) § 1069. It is there said: " * * * where directors personally and knowingly derive a benefit from the fraud of a subagent they may be held liable on the ground that he thereby becomes in a sense their agent. Ordinarily, however, the only grounds upon which directors or other officers can be held liable for the acts of other officers are that (1) they participated therein, * * *" It is also stated in the same treatise, at § 279, "A corporate officer or agent may, of course, act either as such or personally in matters in which the corporation may be deemed to have an interest * * *."

osition, but directs that it be limited solely to the issue of presence of agents of said defendants within this district, and further directs that such discovery be postponed subject to the further order of the court.

In view of the disposition of the instant motions, the Court does not pass upon the point of the insufficiency of the *mode* of service actually effected in the respective motions wherein that point is additionally presented.

The motions of the individual defendants to quash service of summons and to dismiss are therefore denied at this time without prejudice to the right to renew after completion of plaintiff's pre-trial discovery proceedings